UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SADIE C. BURKETT,<br><br>                    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, [1]<br><br>                    Defendant. | Case No. 3:12-cv-05899-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 13, 2013 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 19, 2009, plaintiff filed an application for SSI benefits, alleging disability as of July 15, 2008, due to cardiovascular issues, kidney problems and posttraumatic stress disorder.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

See ECF #10, Administrative Record ("AR") 18, 164.  That application was denied upon initial administrative review on August 12, 2009, and on reconsideration on December 3, 2009.  See AR 18.  A hearing was held before an administrative law judge ("ALJ") on April 11, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  See AR 35-66.

In a decision dated April 29, 2011, the ALJ determined plaintiff to be not disabled.  See AR 18-29.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 7, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  See AR 1; see also 20 C.F.R. § 416.1481.  On October 16, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.  See ECF #3.  The administrative record was filed with the Court on February 8, 2013.  See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred:

(1) in evaluating the medical evidence in the record, including that from Janis L. Lewis, Ph.D., Matthew Comrie, Psy.D., Brian C. Reston, PA-C, and Jamie Nixon, PA-C;

(2) in discounting plaintiff's credibility;

(3) in rejecting the lay witness evidence in the record from plaintiff's half-brother, Patrick M. Morrow;

(4) in assessing plaintiff's residual functional capacity ("RFC"); and

(5) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.

REPORT AND RECOMMENDATION - 2

Plaintiff also argues new evidence submitted for the first time to the Appeals Council warrants remand for a new hearing. For the reasons set forth below, the undersigned agrees the ALJ committed reversible error in evaluating the medical evidence from Dr. Lewis, Dr. Comrie, Mr. Reston, and Ms. Nixon, and in rejecting the lay witness evidence from Mr. Morrow, and thus in assessing plaintiff's residual functional capacity and in finding her to be capable of performing other jobs existing in significant numbers in the national economy. Accordingly, the undersigned finds that while the ALJ erred in determining plaintiff to be not disabled – and therefore that defendant's decision to deny benefits should be reversed – on that basis, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported

REPORT AND RECOMMENDATION - 3

by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial

REPORT AND RECOMMENDATION - 5

evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

    A.    Dr. Lewis

With respect to the medical evidence from Dr. Lewis, the ALJ found as follows:

> In April 2009, the claimant met with psychologist, Janis Lewis, PhD, in connection with a DSHS psychological evaluation (Ex. B20F). Dr. Lewis observed some mild to moderate mental impairment symptoms, including anhedonia, social withdrawal, and motor agitation (Ex. B20F/2). Based upon the clinical interview and mental status examination, Dr. Lewis opined that the claimant had either no limitations, or only mild limitations in cognitive functioning, based on her mental impairment symptoms (Ex. B20F/3). Dr. Lewis opined that the claimant had moderate limitations in her ability to perform routine tasks, although she noted that physical problems interfered with this ability, rather than any psychological impairment (Ex. B20F/3). With regard to social functioning, Dr. Lewis opined that the claimant had mild to moderate limitations (Ex. B20F/3). Dr. Lewis noted the claimant . . . disliked crowds, but that small groups were "ok" (Ex. B20F/3). Dr. Lewis found the claimant's psychological issues did "not preclude work" (Ex. B20F/4). Dr. Lewis recommended domestic violence counseling, and noted that the claimant [sic] concerns were primarily physical. Dr. Lewis' opinion is based on the observations and objective findings from the mental status examination, which was within normal limits (Ex. B20F/5-7). Dr. Lewis' opinion is consistent with her evaluation, and accordingly, substantial weight is given to her opinion.

AR 24. Plaintiff argues that despite giving substantial weight to the opinion of Dr. Lewis, the ALJ did not fully credit all of the functional limitations she found or adequately explain why he was not doing so. The undersigned agrees in regard to the moderate limitation in the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting Dr. Lewis found. See AR 390. This is because the mental residual functional capacity with which the ALJ assessed plaintiff – which consists of the limitation to frequent interaction with co-workers, supervisors or the general public, and the ability to remember, understand and carry out simple and detailed instructions or tasks generally associated with unskilled occupations (see AR 23) – do not sufficiently address that particular moderate limitation.

REPORT AND RECOMMENDATION - 6

While it is true as both defendant and the ALJ note that Dr. Lewis also stated plaintiff's psychological issues "do not preclude work" (AR 391 (emphasis in original)), this statement by itself does not necessarily indicate Dr. Lewis did not think plaintiff was moderately limited in her ability to handle the pressures and expectations of a normal work setting, or that it would not still have at least *some* impact on her ability to work.  To the extent that it does, furthermore, this is an ambiguity in the opinion of Dr. Lewis that the ALJ had the duty to, and therefore should have, resolved before giving that opinion significant weight. See Reddick, 157 F.3d at 722.  While it is true as well that Dr. Lewis commented that the functional limitations she assessed would last for a maximum period of eight months (see AR 391), as pointed out by plaintiff the ALJ did not give this as a basis for declining to adopt them despite having expressly considered the opinion of Dr. Lewis.  The undersigned thus declines to find no – or harmless – error here, even though the time frame indicated by Dr. Lewis may suggest the durational requirement for establishing disability had not been met with respect to the limitations she found.[3]

B.   Dr. Comrie

Plaintiff also challenges the ALJ's evaluation of the medical evidence from Dr. Comrie, which reads:

> In August 2009, State agency Disability Determination Services (DDS) psychologist, Matthew Comrie, PsyD, reviewed the claimant's record, and provided a psychiatrist review and mental residual functional capacity assessment (Ex. B3F; B4F).  Dr. Comrie noted that the claimant's physician reported that the claimant "looked better, made good eye contact" and that her "affect was more upbeat, despite anxiety" (Ex. B4F/3).  Based upon the claimant's reported activities of daily living, and on the objective findings in

---

[3] See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months); see also Stout v. Commissioner of Social Security Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (refusing to accept invitation to dismiss error as harmless if doing so would require affirming denial of benefits on ground not invoked by Commissioner in denying benefits originally); Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

REPORT AND RECOMMENDATION - 7

> the record, Dr. Comrie opined that the claimant could remember and carry out one and two-step instructions, and maintain concentration for up to two hours (Ex. B4F/3). Dr. Comrie also opined that the claimant could work with a supervisor and a small group of co-workers, but that she should avoid work with the general public. Dr. Comrie noted that the claimant reported that she was able to drive, go out to shop for groceries, prepare daily meals, perform household chores, and spend time with her grandchildren (Ex. B4F/3).
>
> In November 2009, DDS psychologist, Bruce Eather, PhD, again reviewed the claimant's record, including this evaluation, and agreed with Dr. Comrie's opinion (Ex. 11F/1). The opinions of Drs. Comrie and Eather are consistent with the overall record that shows that the claimant's mental impairments are not as limiting as she has alleged. Accordingly, substantial weight is given to the opinions of Drs. Comrie and Eather.

AR 25. Dr. Comrie's opinion is contained in a mental residual functional capacity assessment ("MRFCA") form that includes both a Section I in which several moderate mental functional limitations were checked, and a Section III which contains Dr. Comrie's narrative statements concerning plaintiff's ability to function. See AR 265-67. Plaintiff argues the ALJ erred in not adopting all of the moderate mental functional limitations checked off in Section I.

Pursuant to the directive contained in the Commissioner's Program Operations Manual System ("POMS"), however, **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of [the claimant's] RFC**." POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original). While is true that the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nor does the undersigned find or plaintiff point out any valid reasons for not following that directive in this case. On the other hand, the undersigned agrees with plaintiff that the ALJ's determination that she could remember, understand and carry out detailed instructions (see AR 23) conflicts with the opinion of Dr. Comrie that plaintiff may have difficulty therewith set forth in Section III of the MRFCA form (see AR 267). Because the

REPORT AND RECOMMENDATION - 8

ALJ stated he gave significant weight to the opinion of Dr. Comrie despite this consistency without an explanation therefor, he erred here as well.

  C. Mr. Reston

Plaintiff further takes issue with the ALJ's following findings:

> In February 2010, the claimant met with physician assistant, Brian Reston, PA-C, for a [state agency] physical evaluation (Ex. B16F). Mr. Reston observed that the claimant had surgical scars secondary to DeQuervain's tenosynovitis surgery, resulting in decreased grip strength, although the claimant did not allege any such functional limitation (Ex. B2E; B7E; B16F/2). Mr. Reston found that the claimant's shoulder and upper extremities were within normal limits, although he noted that the claimant had crepitus in her right knee. Mr. Reston found that the claimant's physical impairment symptoms caused mild to moderate limitations in the claimant's ability to perform work-related activities (Ex. B16F3). Based on the claimant's report of dizziness caused by her medications, Mr. Reston opined that the claimant's ability to balance, bend, climb, crouch, handle, and kneel were limited (Ex. B16F/3). Despite the claimant's alleged limitations, Mr. Reston opined that the claimant's overall work level was sedentary (Ex. B16F/3). Despite finding the claimant could work at the sedentary level, Mr. Reston then stated that she could not participate in job search activities, because she could not drive while on her medications, and that she might need dialysis (Ex. 16F/4) Mr. Reston's statement regarding the claimant's ability to drive and need for dialysis that is not yet necessary, is inconsistent with his opinion that the claimant had mild to moderate limitations. Mr. Reston's statements and opinion are inconsistent with the objective findings, and therefore, little consideration can be given to them.

AR 26-27. Specifically, plaintiff asserts the ALJ did not adequately explain why he rejected Mr. Reston's opinion that she could not drive while on her medications. The undersigned once more agrees. As noted by the ALJ, Mr. Reston noted mild to moderate physical limitations in various functional areas. See AR 369. But it is not at all clear why an inability to drive due to dizziness is inconsistent with physical limitations that are moderate in severity, defined as a "[s]ignificant interference with the ability to perform one or more basis work-related activities." Id. The ALJ's further comment that "Mr. Reston's statements are inconsistent with the objective findings" (see

REPORT AND RECOMMENDATION - 9

AR 27) also is insufficient, as it is not at all clear which findings he means here.[4]

D.   Ms. Nixon

The undersigned also agrees with plaintiff that the ALJ erred in evaluating the opinion provided by Ms. Nixon in March 2011. With respect to that opinion, the ALJ found:

> . . . In March 2011, Ms. Nixon provided an opinion regarding the claimant's mental functioning (Ex. B27F). Ms. Nixon opined that the claimant had mild limitations in her ability to carry out detailed instructions (Ex. B27F/2). With regard to social functioning, Ms. Nixon found that the claimant had either no limitations, or only mild limitations (Ex. B27F/2-3). Ms. Nixon's opinions are consistent with the objective findings, and with other medical opinions in the record (Ex. B9F; B20F). Accordingly, significant consideration is given to Ms. Nixon's opinions.

AR 26. As noted by plaintiff in addition to the mild mental functional limitations she assessed, Ms. Nixon also found moderate limitations in the following other functional areas: remembering locations and work-like procedures; understanding and remembering both very short and simple and detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions; and performing at a consistent pace without an unreasonable number and length of rest periods. See AR 440-41. The ALJ, however, offered no explanation as to why he did not also give significant consideration to these moderate limitations, or adequately take them into account in assessing plaintiff's residual functional capacity. See AR 22-23. The failure to do so here constitutes error on the ALJ's part.

---

[4] As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

REPORT AND RECOMMENDATION - 10

II.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains lay witness statements from plaintiff's half-brother, Mr. Morrow, in regard to which the ALJ found:

> . . . Mr. Morrow reported that he visited with the claimant about once per week, and that she had always had back problems (Ex. B9E/1-2). Mr. Morrow also reported that the claimant had problems with her grip strength, numbness, and the feeling that her hands were "asleep" (Ex. B9E/2). Mr. Morrow stated that the claimant could not sit or stand in one place for much more than 10 minutes at a time (Ex. B9E/3). He added that the claimant needed to lie down during the day, but did not elevate her feet (Ex. B9E/3). Mr. Morrow wrote that although the claimant could drive, she used paratransit services to go to appointments, and that he took her to the grocery store to shop (Ex. B9E/4). With regard to mental impairments, Mr. Morrow reported that the claimant had mood swings, crying spells, had become very forgetful, lacked focus and the ability to complete tasks, and did not like to be around too many people. (Ex. B9E/4-5). Mr. Morrow also indicated that the claimant was easily upset by unexpected changes in routine (Ex. B9E/5). Mr. Morrow's statements, however, are inconsistent with the objective findings and medical opinions in the record. They are also inconsistent with the claimant's reported activities of daily living. Accordingly, little consideration can be given to Mr. Morrow's statements.

AR 27. Here again the undersigned agrees with plaintiff that the ALJ gave insufficient reasons for rejecting the lay witness statements from Mr. Morrow. Specifically, the ALJ's general comment that both "the objective findings and medical opinions in the record" and plaintiff's

REPORT AND RECOMMENDATION - 11

"reported activities of daily living" (id.) are inconsistent with Mr. Morrow's statements, gives little guidance to the Court in determining whether these are germane reasons for rejecting those statements. That is, the ALJ did not give any indication as to which findings and activities he considered here. Although the ALJ did discuss medical evidence in the record and plaintiff's activities elsewhere in his decision (see AR 23-27) – and specific and legitimate inferences may be drawn from the ALJ's decision – the Court should not have to guess at the specific portions of the record the ALJ considered when rejecting lay witness evidence.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In

REPORT AND RECOMMENDATION - 12

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this found plaintiff had the residual functional capacity:

> **. . . to perform sedentary work . . . except that [she] is limited to frequent interaction with co-workers, supervisors, or the general public.  The claimant can remember, understand, and carry out simple, and detailed instructions or tasks generally associated with unskilled occupations . . .**

AR 22-23 (emphasis in original).  But because as discussed above the ALJ erred in evaluating the medical evidence in the record from Dr. Lewis, Dr. Comrie, Mr. Reston and Ms. Nixon, the undersigned agrees with plaintiff that the ALJ's assessment of her RFC cannot be said to be supported by substantial evidence in the record at this time.  As such, the undersigned finds that here too the ALJ erred.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

REPORT AND RECOMMENDATION - 13

claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 61-62.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 62-63.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 28-29.  But because as discussed above the ALJ erred in assessing plaintiff's RFC, the undersigned once more agrees with plaintiff that the ALJ's step five determination – and therefore his finding of non-disability – cannot be said to be supported by substantial evidence at this time.[5]

V.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

---

[5] The undersigned rejects, however, plaintiff's contention that she should be found disabled based on the vocational expert's testimony in response to the additional functional limitations posed -- i.e., a need to have at least one to two unscheduled absences every month or take rest breaks as needed in excess of two or three times beyond a normal period for such breaks (see AR 63-64) – as the record does not at this time support the existence of such limitations.

REPORT AND RECOMMENDATION - 14

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's functional limitations and the lay witness statements from plaintiff's half-brother, and therefore in regard to plaintiff's residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is appropriate.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 15

is directed set this matter for consideration on **December 13, 2013**, as noted in the caption.

DATED this 22nd day of November, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16